**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CARL JONES and KENNETH FLOYD, each individually**
**and on behalf of others similarly situated**                                    **PLAINTIFFS**

**4:20-CV-00339-BRW**

**BURKHALTER TECHNOLOGIES, INC,** *et al.*                                    **DEFENDANTS**

<u>**ORDER**</u>

Pending is a Renewed Joint Motion to Dismiss and Approve Settlement Agreement (Doc. No. 10). For the reasons set out below, the motion is GRANTED. This case is DISMISSED.

**I.  BACKGROUND**

Plaintiffs filed this case on March 26, 2020.[1] The very next day (it is unclear whether Defendants were aware the case had been filed), Plaintiff Floyd signed a receipt and waiver from Defendants for damages ($777.18), which was in excess of what he was entitled to under the FLSA.[2] Defendants sent a similar payment and waiver to Plaintiff Jones, but he did not accept. On May 29, 2020, Defendants sent the same payment ($373.83) and waiver for Mr. Jones to Plaintiffs' lawyers. Ultimately, Plaintiffs settled their claims for those exact amounts, as set out in the settlement agreement.[3]

**II.  DISCUSSION**

Based on a review of the settlement negotiations, liability damages were agreed-to quickly, but the case was not completely resolved because there was a hold-up on fees. During that time, Plaintiffs' lawyers continued to bill for work on the case. In mid-June, Defendants

---

[1] Doc. No. 1.

[2] Doc. No. 12-3.

[3] Doc. No. 12-1.

requested a fees demand from Plaintiffs' lawyers. Rather than provide one, Plaintiffs' lawyers asked about filing a Rule 26(f) report. Defendants' lawyer responded, "Proceed as you deem necessary, but be advised that, absent a court order, my client will not pay for any attorneys' fees incurred in this matter after he has already paid your clients more than they could recover if we were to go to trial."[4] After more prodding by Defendants' lawyer, Plaintiffs' lawyers, on July 9, 2020, responded with a fees demand of $3,000, which was "their best and final offer for fees."[5] Notably, as of June 22, 2020 (when Defendants followed-up regarding a fees demand), Plaintiffs' lawyers had done around $850 in work (based on their rates and billing records).[6] Yet, they demanded $3,000.

The parties went back and forth a bit, and Defendants eventually informed Plaintiffs' lawyers that "it is our position that holding up the final resolution of this matter based solely on the issue of attorneys' fees is improper. The delay in resolving the issue of the demand for fees is not something we had control over."[7] In other words, Defendants' lawyers felt that the only reason more work was done on the case was because Plaintiffs' lawyers delayed in providing a fees demand, while simultaneously running up more fees.

Plaintiffs' lawyers responded that "settlement to the plaintiffs and the issue of fees are not tethered together; the liability has been resolved. It was resolved before we started discussing fees."[8] Defendants told Plaintiffs to inform the Court of this fact. Plaintiffs filed a

---

[4] Doc. No. 12-3.

[5] *Id.*

[6] Doc. No. 12-4.

[7] Doc. No. 12-3.

[8] *Id.*

notice of settlement later that day.[9] That notice made official that the liability issues were resolved, but fees were being negotiated.

When negotiations continued a month later, Plaintiffs' lawyers explained their continued demand for $3,000, and Defendants would not budge from $1,500. Eventually, Plaintiffs' lawyers accepted Defendants' offer of $1,500 for fees and costs.

It troubles me that Plaintiffs' lawyers continue to delay settlement of liability damages until the fees are resolved.[10] However, in this case, they eventually filed the appropriate notice and started negotiating fees separately.

It also troubles me that Plaintiff's lawyers, despite repeated scoldings, continue to make fees demands for work they have neither done nor intend to do. A reasonable fee is earned; it is not an arbitrary demand that you hope opposing counsel will pay without question. Once again, "[i]t appears to me that, from the beginning, Plaintiffs' lawyers determined the amount of fees they wanted in this case and pushed to get that amount."[11] Notably, Plaintiffs' lawyers continued to do unnecessary work on the case while knowing that the only outstanding issue was the fees amount. The only explanation is their desire to get more fees. However, Defendants resisted, and the parties agreed to a reasonable fees amount, based on the record.

---

[9]Doc. No. 6.

[10]See *Vines, et al. v. Wellspun, et al.*, 453 F. Supp. 3d 1156, 1158 (E.D. Ark. 2020) ("From the beginning, both liability damages and lawyers' fees were simultaneously discussed during negotiations. In later emails the parties listed the damages and lawyers' fees amounts separately, but this practice does not negate the fact that an agreement on both liability damages and lawyers' fees was required before Plaintiffs' lawyers would agree to finalize settlement of the liability damages.").

[11]*Vines v. Wellspun*, No. 4:18-CV-00509, Doc. No. 85-1 (E.D. Ark. May 14, 2020).

## CONCLUSION

Based the submissions explaining the settlement agreement and a review of the record, I find that the settlement represents a fair and reasonable resolution of a *bona fide* dispute and is consistent with the goals of the FLSA.  Furthermore, the parties have negotiated liability damages entirely separately from lawyers' fees, consistent with Eighth Circuit precedent.

For the reasons set out above, the Joint Motion to Dismiss and Approve Settlement Agreement (Doc. No. 10) is GRANTED.  Accordingly, this CASE is DISMISSED with prejudice, subject to the terms of the settlement agreement.  This Court specifically retains jurisdiction to enforce the terms of the settlement agreement.

IT IS SO ORDERED, this 23rd day of October, 2020.

Billy Roy Wilson<br>
UNITED STATES DISTRICT JUDGE